**MARK MIGDAL & HAYDEN**
PAUL A. LEVIN (CA State Bar No. 229077)
LAUREN M. GIBBS (CA State Bar No. 251569)
80 SW 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440
e-mail: paul@markmigdal.com
lauren@markmigdal.com

**MORTGAGE RECOVERY LAW GROUP, LLP**
MICHAEL H. DELBICK (CA State Bar No. 139200)
550 North Brand Boulevard, Suite 1100
Glendale, California 91203
Telephone: (818) 630-7900
e-mail: mdelbick@themrlg.com

**FEDERAL DEPOSIT INSURANCE CORPORATION**
DOUGLAS T. HOFFMAN (to seek admission pro hac vice)
3501 Fairfax Drive, E-7006
Arlington, Virginia 22226
Telephone: (703) 516-5383
e-mail: dohoffman@fdic.gov

Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK, <br><br> Plaintiff, <br><br> vs. <br><br> PRIMARY RESIDENTIAL MORTGAGE, INC., <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR CONTRACTUAL INDEMNITY** |

COMPLAINT

**INTRODUCTION**

1. Pursuant to written agreements, defendant Primary Residential Mortgage, Inc. ("PRMI" or "Defendant") brokered mortgage loans for Washington Mutual Bank and/or its subsidiaries, including Long Beach Mortgage Company (collectively, "WaMu"). As part of their agreements, PRMI promised to indemnify WaMu for any losses arising either directly or indirectly, or in any way as a result of its submission of any inaccurate or incomplete application or other documentation for loans PRMI brokered.

2. After WaMu funded the loans from PRMI, WaMu sold PRMI-brokered loans into residential mortgage-backed securitized trusts ("RMBS Trusts") for which Deutsche Bank National Trust Company served as trustee ("Trustee"). The Trustee ultimately asserted claims that it suffered losses because of defective loans sold into the RMBS Trusts, including at least thirty-two (32) mortgage loans brokered by PRMI ("PRMI Defective Loans").

3. Plaintiff Federal Deposit Insurance Corporation as Receiver for WaMu ("FDIC-R" or "Plaintiff") incurred losses settling the Trustee's claims. FDIC-R's losses arose out of PRMI's provision of inaccurate or incomplete loan applications or other documentation prepared by or at the direction of PRMI including, *inter alia*, PRMI's submission of loan applications and documentation that misrepresented such things as the borrowers' credit histories, employment status, income, or occupancy status.

4. FDIC-R demanded that PRMI honor its written contractual indemnification obligation. Because PRMI has not honored its obligations, FDIC-R brings this action as successor to WaMu's rights, titles, powers, and privileges.

**PARTIES, JURISDICTION, AND VENUE**

5. The Federal Deposit Insurance Corporation is an instrumentality of the United States and is organized and exists under the laws of the United States. 12 U.S.C. §§ 1811, 1821(d). Pursuant to 12 U.S.C. § 1821(d)(2), FDIC-R succeeded to

all rights, titles, powers, and privileges of WaMu and of any stockholder, member, account holder, depositor, officer, or director of WaMu with respect to the bank and its assets. FDIC-R brings this action in its capacity as the duly appointed receiver of WaMu, which the Office of Thrift Supervision closed on September 25, 2008, appointing FDIC as Receiver for WaMu that same day.

6. PRMI is a Utah corporation with its principal place of business in Salt Lake City, Utah. PRMI is registered and licensed to do business in 49 states, including California.

7. This Court has subject-matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

8. PRMI contractually agreed to venue in this district. *See* Broker Agreement ("Agreement"), ¶ 21, attached hereto as Exhibit 1. Venue is also proper in this district pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district because, among other things, the contractual business relationship was entered into by WaMu in this district and the place of performance for all or some of the obligations sued upon was in this district. Venue is also proper in this district because PRMI resides in this district in that it is subject to the court's personal jurisdiction with respect to the action at issue.

## FACTUAL ALLEGATIONS

9. WaMu was a federal savings bank that, directly or through affiliates and/or subsidiaries, among other things, purchased, funded, and sold mortgage loans to investment trusts that packaged loans into securities for investors, which are generally known as residential mortgage-backed securities.

10. On information and belief, PRMI engaged in the business of brokering, originating, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property.

### A. PRMI's Contractual Obligations

11. PRMI and WaMu had a contractual business relationship, governed by one or more mortgage broker agreements including the Agreement attached hereto as Exhibit 1.

12. PRMI agreed that it would prepare, package, and submit loan applications on behalf of loan applicant borrowers seeking WaMu loans. PRMI was responsible for, among other things, representing loan applicants in locating lenders; interacting directly with and interviewing the borrower, counseling and assisting the borrower in the financing process; choosing the loan product with the borrower; collecting relevant information and documentation in support of the loan application; preparing the loan application and submission package; and submitting the completed loan package to WaMu. PRMI agreed to only submit loan applications that met all applicable requirements established by WaMu. PRMI further agreed it would "obtain factual data, at its own expense, relating to the loan application, necessary to the proper and accurate completion of such application[.]"

13. PRMI was compensated for any loans funded by WaMu.

14. Pursuant to the Agreement, PRMI expressly agreed to indemnify WaMu as follows:

> [PRMI] will indemnify, defend and hold [WaMu] … harmless from any and all costs, claims, charges, actions, causes of action, losses or liability arising either directly or indirectly, regardless of any indemnitee's negligence, by reason of [PRMI's] negligence, a breach of the terms or conditions of this Agreement, or in any way as a result of an inaccurate or incomplete application or other documentation prepared by or at the direction of [PRMI]. (Ex. 1 [Agreement] at ¶ 14).

### B. The PRMI Defective Loans

15. Pursuant to the Agreement, PRMI brokered the 32 PRMI Defective Loans summarized on Exhibit 2 that is incorporated by reference and attached hereto.

16. As noted above and set forth in more detail below, the Trustee asserted claims against FDIC-R based on alleged breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, including the PRMI Defective Loans. Accordingly, FDIC-R incurred losses in connection with the PRMI Defective Loans.

17. The loan applications and documentation for the PRMI Defective Loans failed to meet "all applicable requirements" and "terms or conditions of th[e] Agreement," and contained inaccurate and incomplete loan applications or other documentation because of misrepresentations in the application materials, including but not limited to misrepresentations relating to the quality and characteristics of the loans, the borrowers, and the collateral. As a result, the PRMI Defective Loans failed to meet all applicable requirements and terms and conditions of the Agreement.

18. As an example, PRMI originated two mortgage loans in the amount of $120,000 and $30,000 to TH in February 2006. The loan application submitted by PRMI stated that TH earned $6,311 per month (totaling $75,732 per year). However, as shown on TH's 2007 bankruptcy filing, TH only earned a total of $23,408 and $25,400 in 2005 and 2006, respectively. Together, the loans resulted in a $76,364 loss.

19. As another example, PRMI originated a $76,500 mortgage loan to RM in March 2006. The loan application failed to disclose RM's purchase of a property one month earlier, resulting in $101,650 in undisclosed mortgage debt. The RM loan resulted in a $37,432 loss.

**C. WaMu's Sale of the PRMI Defective Loans to the RMBS Trusts**

20. After WaMu funded the PRMI Defective Loans, WaMu sold each of them to the RMBS Trusts.

21. In connection with such sales, and in reliance on the materials, representations, obligations, and remedies PRMI provided to WaMu, WaMu provided representations, obligations, and remedies to the RMBS Trusts regarding the quality and characteristics of the loans, the borrowers, and the collateral. With respect to defective loans, WaMu was liable to the RMBS Trusts, *inter alia*, where there was a material misrepresentation or omission in a loan application or other supporting documentation.

**D. The Trustee Action and FDIC-R's Settlement with Trustee**

22. After WaMu failed, on December 30, 2008, the Trustee filed a proof of claim with FDIC-R asserting that WaMu breached representations and warranties in connection with the loans sold to various RMBS Trusts. On August 26, 2009, Trustee filed a lawsuit in the District Court for the District of Columbia against FDIC-R for losses resulting from such loans that WaMu sold to the RMBS Trusts, including the PRMI Defective Loans.

23. FDIC-R defended itself against the claims in the Trustee's lawsuit and eventually settled with the Trustee.

24. Pursuant to a settlement agreement with an effective date no earlier than September 5, 2017, FDIC-R and the Trustee settled claims against FDIC-R, including representation and warranty breach claims arising out of or relating to the PRMI Defective Loans. On September 5, 2017, FDIC-R paid the $3,006,929,660 Receivership Certificate to the Trustee in settlement of Trustee's claims, including claims on the PRMI Defective Loans. Settlement of the Trustee's claims for that court approved amount was objectively reasonable. FDIC-R's indemnification claims are timely because they are brought within six years of the date of accrual. 12 U.S.C. § 1821(d)(14).

25. FDIC-R was liable for the losses due to breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts,

which loans included the PRMI Defective Loans.  The Trustee asserted that FDIC-R was contractually responsible for breaches of representations and warranties including, *inter alia*:  misrepresentations, negligence, or fraud occurred in the origination of the loan; appraisals were inconsistent with underwriting guidelines; defaults existed by, for example, a misrepresentation of income; and loan-to-value ratios exceeded 100 percent.  Given PRMI's role and conduct in connection with the PRMI Defective Loans, including PRMI's relationship to the borrowers and its preparation, gathering, and submission of loan applications and documentation, FDIC-R's liability and loss to the Trustee arose out of PRMI's provision of inaccurate or incomplete loan applications and supporting documentation prepared by or at the direction of PRMI.

### E. PRMI's Breach of the Indemnification Obligations

26. On October 12, 2022, FDIC-R sent a demand letter to PRMI seeking indemnification for its losses arising out of and/or related to PRMI'S provision of inaccurate or incomplete loan applications or other documentation in connection with the PRMI Defective Loans.  PRMI has not honored its obligation to indemnify under the Agreement.

27. The Agreement provides that the prevailing party in any action to enforce it may recover its reasonable attorneys' fees.  In order to enforce FDIC-R's rights under the Agreement, FDIC-R has retained outside counsel and agreed to pay reasonable attorneys' fees.  In addition, FDIC-R has assigned in-house counsel to assist in actively preparing to bring this case to trial.

28. All conditions precedent to the relief sought in this action have been fulfilled.

# CLAIM FOR RELIEF

## (Contractual Indemnification)

29. Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

30. The Agreement is a valid and enforceable contract.

31. Plaintiff substantially performed all its obligations under the Agreement.

32. FDIC-R is entitled to indemnification from PRMI for losses and liabilities that FDIC-R suffered settling the Trustee's claims, arising out of PRMI's provision of inaccurate or incomplete applications or other documentation prepared by or at the direction of PRMI, in connection with the PRMI Defective Loans.

33. PRMI breached its obligations to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FDIC-R respectfully requests that it be granted:

A. A judgment against PRMI in an amount to be proven at trial for its breach of its indemnification obligations;

B. Pre-judgment interest under 12 U.S.C. § 1821(l) or applicable state law;

C. Reasonable attorneys' fees;

D. Costs and expenses; and

E. Any other relief as the Court deems just and proper.

| | |
|---|---|
| DATED: July 28, 2023 | MARK MIGDAL & HAYDEN |
| | By:       /s/ Paul A. Levin |
| | Paul A. Levin |
| | Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank |
| DATED: July 28, 2023 | MORTGAGE RECOVERY LAW GROUP, LLP |
| | By:       /s/ Michael H. Delbick |
| | Michael H. Delbick |
| | Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank |
| DATED: July 28, 2023 | FEDERAL DEPOSIT INSURANCE CORPORATION |
| | By:       /s/ Douglas T. Hoffman |
| | Douglas T. Hoffman (to seek admission to pro hac vice) |
| | Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank |